466 So.2d 52 (1985)
Douglas O. EALY, Plaintiff-Appellant,
v.
BILL ALLEN DODGE, INC., et al., Defendant-Appellee.
No. 16819-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1985.
*53 Otha Curtis Nelson, Sr., Baton Rouge, for plaintiff-appellant.
McLeod, Swearingen, Verlander and Dollar by Richard A. Bailly, Monroe, for defendants-appellees.
Before MARVIN and SEXTON, JJ., and PRICE, J. Pro Tem.
MARVIN, Judge.
Plaintiff appeals a judgment in a jury trial which rejected his demands for damages against the defendant car dealer for lending him an automobile with brakes that were allegedly defective. The principal issues are factual. We find the jury verdict supported by evidence and not clearly wrong and affirm the judgment.

FACTS
Plaintiff was driving a Datsun sedan that was loaned to him for his use while his car was being serviced by defendant when he collided the Datsun with a Dodge driven by Robert Johnson at an intersection in Monroe. Plaintiff claims the defendant was negligent in providing him with a car with defective or unsafe brakes and is therefore liable for his injuries.
A jury, in answer to written interrogatories, found defendant was not negligent and the trial court rendered judgment accordingly.
Plaintiff purchased a used car and a service contract which obligated defendant to provide a car for plaintiff to use while plaintiff's car was being serviced. On Friday, April 16, 1982, plaintiff brought his car in for service and defendant loaned him a used Datsun. Plaintiff, his wife, and another couple, went out of town that weekend in another vehicle. Plaintiff drove the Datsun from the dealership to an attorney's office on Friday afternoon and later drove the Datsun to his apartment. It is unclear whether he used the car to take his wife to work Monday morning. Defendant said that about noon on Monday he drove from his apartment toward defendant's shop to pick up his own car. Plaintiff said that the brakes failed when *54 he attempted to stop at a stop sign but that the brakes had worked properly until this sudden failure.
The brake system of the Datsun was examined after the accident by the investigating officer as well as by an employee of defendant. Both found that the reservoirs of the dual brake system did not contain brake fluid. Defendant's employee filled the reservoirs with fluid and tested the brakes. He testified that once the system was filled with fluid the brakes worked properly and that the brake lines did not leak and had not been cut. On a closer examination defendant's employee found that the bleeder valves were wet with fluid, indicating that the valves had been opened to drain the brake fluid and then closed. He explained that bleeder valves are generally used to "bleed" the brakes as a way of removing air from the system, but that the liquid in the system can also be drained by opening the valves. An insurance appraiser who examined the vehicle after the accident in June and July 1982, found that, with fluid, the brakes functioned properly, did not leak, and that the lines were not "cut." With fluid, the brakes worked after the accident and continued to work through the trial, 23 months later, without further attention or additional fluid.
Plaintiff contends the jury manifestly erred in its verdict; that the trial judge failed to give jury instructions on the applicability of res ipsa loquitur and strict liability; failed to grant plaintiff's motion for mistrial after a defense witness and a juror had an out-of-court conversation during a trial recess; and erred in allowing defendant's employee, a brake mechanic with 14 years experience but no formal training, to qualify and testify as an expert in brake mechanics, maintenance and repair. Plaintiff also contends the trial court prejudiced the jury by evidentiary rulings relative to a traffic citation issued to plaintiff for driving an unsafe vehicle.

THE FAILURE TO GIVE JURY INSTRUCTIONS
CCP Art. 1793 states in part:
A party may not assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. (Emphasis ours.)
The record shows no request by plaintiff that the now desired instructions be given the jury and no objection by plaintiff that such instructions were not given. We need not and do not further consider this assignment of error.

THE JUROR/DEFENSE WITNESS CONTACT
After a recess and after plaintiff rested, the trial court granted plaintiff's request that the jury be excused when trial resumed. Plaintiff's counsel then moved for a mistrial on the ground that during the recess he saw Mrs. White, a juror, talking to Mr. Barnes, defendant's employee-witness and later an expert witness for defendant. The court questioned Mr. Barnes, who admitted that
I did say to her, I said, "I understand you are a school bus driver. So is my wife." and I told her that my wife worked forat the Cerebral Palsy School and drove a bus also. So I believe if you will ask Mrs. White she will tell you the same thing.
Mr. Barnes also testified that he did not know Mrs. White before the trial began and that the only reason for the conversation was that they happened to be walking down the hall together during the recess.
Mrs. White admitted the conversation and also limited the substance of the conversation to the driving of school busses. She also testified that Mr. Barnes had initiated the conversation and that she did not know him before the trial and did not tell others on the jury of the conversation.
The court ruled there was no discussion of the "case," and did not grant the mistrial, finding there was no evidence of any likelihood of any influence on Mrs. White. The court excused Mrs. White to avoid any affect on the other jurors and ruled that *55 trial would proceed with 11 jurors, pursuant to a stipulation of the parties that the trial would continue in the event one or more of the jurors became unable to serve. Nine jurors of course, still had to agree to the verdict. On appeal, plaintiff argues that the removal of Mrs. White, a juror of the same race as plaintiff, prejudiced him because he sought to have as many jurors of his race as possible. Plaintiff cites CCP Art. 1972, formerly Art. 1814:
A new trial shall be granted ... [w]hen the jury was bribed or has behaved improperly so that impartial justice has not been done.
The question before us is whether the jury behaved improperly so that impartial justice has not been done.
In Boyette v. Auger Timber Co., 403 So.2d 800 (La.App. 2d Cir.1981), writ denied, the appellant assigned as error the trial court's failure to grant a mistrial because appellant's main witness was arrested in the presence of the jury on the first day of the trial and that one of the jurors was present in the sheriff's office when appellant's witness was booked. The juror that was present when the witness was booked was dismissed by the court as a juror on the following day. This court held that the juror's dismissal was not error and cured any possible prejudice.
In Kollet v. Baggot, 400 So.2d 1085 (La. App. 1st Cir.1981), the plaintiff argued that the trial court had erred in refusing to grant a mistrial or a new trial because a juror and an interested party on the third day of a five day trial introduced themselves, shook hands and exchanged pleasantries. Later the same day at a lunch recess, the juror and the interested party met by chance, greeted each other in the presence of other jurors and diners and began a brief discussion, but not about the case being tried. The court replaced the juror with an alternate on the last day of trial. Plaintiff there argued that the exchange was so inherently prejudicial and so improper that impartial justice was not done. The court noted CCP Art. 1973, and the wide discretion of the trial court to allow or deny a motion for mistrial. The appellate court noted that the record showed that the trial judge found no misconduct to constitute proof that the jury behaved improperly. Kollet, at 1086. The court agreed that the comments exchanged between the party and the juror were harmless and held that the trial court did not abuse its discretion by denying a mistrial.
We likewise agree here that the discussion was brief and harmless, that any possible prejudice was cured by the release of the juror, and find that the trial court did not abuse its discretion by denying mistrial.

EVIDENTIARY RULINGS IN REGARD TO THE TRAFFIC CITATION
Plaintiff was cited on the day of the accident for driving an unsafe vehicle. Plaintiff's counsel attempted to question plaintiff about receiving the citation. Defense counsel objected to the citation as irrelevant and immaterial. The court agreed that the citation was irrelevant and sustained the objection.
Plaintiff later called the officer who wrote the ticket and attempted to question him about the ticket. The defense again objected and the objection was sustained.
After plaintiff rested, defense called the officer for another purpose. During cross-examination of the officer, plaintiff's counsel again offered a copy of the citation into evidence. Defense counsel objected, arguing that because the case was not plaintiff's in chief, it was not proper for plaintiff to offer exhibits. The following exchange then occurred:
BY THE COURT: Just to keep things straight wait till the case gets back to you to offer it.
BY MR. NELSON: Your Honor, are you telling me that I can't offer a document into evidence when this man is on cross-examination?
BY THE COURT: Yes, sir.
BY MR. NELSON: Your Honor, I would like to note an objection to your ruling at this particular time because I think it's *56 contrary to the Louisiana Code of Civil Procedure.
BY THE COURT: All right. Let your objection be noted.
BY MR. NELSON: I'd like to proffer the document as Proffer 13.
BY THE COURT: You may offer it when the case gets back to you.
BY MR. NELSON: That's all the questions I have.
On rebuttal, plaintiff again called the officer and questioned him about the traffic citation. Plaintiff offered and the court admitted the citation as evidence.
Plaintiff contends that the trial judge's initial rulings on the admissibility of the traffic citation prevented him from receiving a "fair and an impartial trial." As we appreciate this argument, plaintiff says that the manner of the judge's rulings caused plaintiff's counsel to appear incompetent in the eyes of the jury, and thereby prevented the jury from assessing the validity of plaintiff's claim "without prejudice."
The defendant argues the trial court's two initial rulings on the citation were correct because the citation is hearsay. Defendant also correctly argues that CCP Art. 1632 supports his technical objection to the timing of plaintiff's introduction of evidence. Additionally we do not find that any possible prejudice occurred because the traffic citation was eventually admitted. Defendant does not question on appeal the eventual admission of the citation.
We emphasize that plaintiff's assignment relates solely to the manner in which the court made its rulings on evidentiary objections. The record does not indicate that the court badgered plaintiff's counsel, impugned his competence, or acted discourteously in any way. We detect nothing in the record to show even impatience. The record does not remotely suggest the possibility that plaintiff suffered prejudice on account of the trial judge's rulings or mannerisms relative to the traffic citation. If the trial judge was in error in any respect, which we do not find, the error was harmless in our opinion. Plaintiff received a fair and an impartial trial.

TESTIMONY OF DEFENDANT'S EXPERT WITNESS
Plaintiff contends that William Barnes should not have been allowed to testify as an expert witness. Barnes had worked as a brake and front end mechanic for 14 years, the last three for defendant. He was admitted by the trial court as an expert in brake mechanics, maintenance, and repair.
Plaintiff objected because Barnes was employed by defendant; because Barnes serviced the Datsun that was involved in the collision a few weeks later; because Barnes had not been admitted as an expert witness before this trial; and because he lacked "formal" training in this area of expertise.
The decision as to whether a person is qualified as an expert is within the discretion of the trial judge. We do not reverse absent a finding that the decision of the trial court is clearly erroneous. Hebert v. Broussard, 450 So.2d 1038 (La.App. 1st Cir.1984); Faustina Pipe Line Co. v. Broussard, 450 So.2d 17 (La.App. 3d Cir. 1984), writ denied; Frank L. Beier Radio, Inc. v. Brown, 453 So.2d 656 (La.App. 5th Cir.1984), writ denied. Experience alone is sufficient to qualify a person as an expert. Hebert, supra. Abshire v. W.D.L. Investments, Inc., 428 So.2d 1145 (La.App. 1st Cir.1983), writ denied. Burrell v. Kirkpatrick, 410 So.2d 1255 (La.App. 3d Cir.1982). The fact that a witness is a party or an employee of a party does not preclude his qualification as an expert because the potential bias of the witness may be explored on cross-examination and argued to the jury. See Dunn v. Sears, Roebuck and Co., 639 F.2d 1171 (5th Cir.1981), modified in part on other grounds, 645 F.2d 511 (5th Cir.1981), citing Federal Rules of Civil Procedure; *57 Roy v. Hazelton, 349 So.2d 1373 (La.App. 3d Cir.1977).
Here the jury knew of the witness' relationship with the defendant, that the witness had worked on the automobile prior to the accident, and that he had no formal training. These circumstances affected only the weight and not the admissibility of Barnes' testimony. Most of Barnes' testimony was factual and not opinion. We find no abuse of the trial judge's considerable discretion or the jury's assessment of the evidence.

WAS THE JURY'S VERDICT MANIFESTLY ERRONEOUS?
Plaintiff's major complaint is that the jury erred in finding no negligence or fault on the part of the defendant car dealer. Plaintiff testified that the brakes on the Datsun worked properly the few times he drove it before the accident. No evidence of brake fluid was found on the street at or near the intersection. The jury heard evidence that the bleeder valves on the Datsun were wet with fluid, indicating that they had been opened and then closed, and that once fluid was restored to the system the brakes functioned properly and did not leak after the accident. It was also revealed that the driver of the Dodge involved in the collision was a half-brother of plaintiff's sister and that he had purchased insurance on the Dodge only a few hours before the collision and was paid by that insurance company a portion of the damages he sustained in the collision.
The jury could have deduced, as defendant argued, that the brake fluid on the Datsun was intentionally drained by someone other than defendant after the car was loaned to plaintiff. The jury found no negligence or fault on the part of the defendant dealer, effectively stating that it did not believe that the brakes on the car were defective at any time.
Under these circumstances, the verdict is not manifestly erroneous and will not be disturbed. At appellant's cost, judgment is AFFIRMED.