765 So.2d 378 (2000)
Dr. & Mrs. Edward A. and Diane ROBINSON, III, Individually, and on Behalf of Their Deceased Son, Michael Robinson, and on Behalf of Their Minor Children, Mark and Ebony Robinson
v.
ASTRA PHARMACEUTICAL PRODUCTS, INC. and The ABC Insurance Company.
Dr. and Mrs. Edward A. and Diane Robinson
v.
Dr. Kenneth Wilkinson and Medical Protective Insurance Company.
Nos. 98 CA 0361, 98 CA 0362.
Court of Appeal of Louisiana, First Circuit.
March 31, 2000.
Writ Denied June 2, 2000.
*380 Mark D. Plaisance, Baker, Counsel for Plaintiffs/Appellants, Dr. and Mrs. Edward and Diane Robinson.
Joseph J. Lowenthal, Jr., New Orleans, Counsel for Defendant/Appellee, Astra USA, Inc.
Frank A. Fertitta, Baton Rouge, Counsel for Defendant/Appellee, Dr. Kenneth Wilkinson.
Hebert J. Mang, Jr., Baton Rouge, Counsel for Defendant/Appellee, Dr. Evelyn Hayes.
Before: CARTER, PETTIGREW and CLAIBORNE[1], JJ.
CLAIBORNE, Judge Pro Tempore.
In this medical malpractice/products liability action, the plaintiffs, Dr.[2] and Mrs. Robinson, appeal a judgment that adopted a jury verdict dismissing their claims for damages, finding that the death of plaintiffs' unborn child was not caused by the administration of the anesthetic, Citanest Plain or Prilocaine, to Mrs. Robinson in conjunction with a root canal procedure performed during the second trimester of her pregnancy.
On May 5, 1987, Mrs. Robinson went to see her dentist, defendant Dr. Wilkinson, complaining of tooth pain. Dr. Wilkinson diagnosed a small abscess on a tooth, and since Mrs. Robinson was pregnant at the time, he advised that she postpone treatment until after the baby was born since he preferred not to perform elective surgery involving local anesthetics on pregnant patients. However, Mrs. Robinson's tooth pain continued and worsened and on May 20, 1987, she went to her obstetrician/gynecologist, defendant Dr. Evelyn Hayes, seeking advice on how to proceed regarding the tooth pain and abscess. Dr. Hayes gave her approval for a root canal. Mrs. Robinson returned to Dr. Wilkinson on May 27, 1987 stating that Dr. Hayes had approved her getting a root canal since she was in her second trimester of pregnancy. Dr. Wilkinson confirmed the approval by a phone call to Dr. Hayes' nurse.
Dr. Wilkinson then performed the root canal, first anesthetizing the area with an injection of 36 milligrams of Citanest Plain (Prilocaine). Mrs. Robinson tolerated the procedure well and showed no signs of adverse reaction. She returned for a follow-up visit on June 5, 1987 during which no problems were noted.
However, on June 8, 1987, Mrs. Robinson began experiencing a brownish vaginal *381 discharge and went to see Dr. Hayes. Dr. Hayes observed no fetal movements or heart activity, and a later sonogram confirmed fetal demise. Mrs. Robinson miscarried the next day. Plaintiffs contend the administration of the anesthesia caused the fetal demise. They brought this action for damages, alleging products liability against the manufacturer of the drug, Astra Pharmaceutical Products, Inc., (Astra), and medical malpractice against Drs. Hayes and Wilkinson. After a trial, the jury unanimously found the plaintiffs failed to prove by a preponderance of the evidence that the death of their unborn child was caused by Citanest Plain. Accordingly, the trial court rendered a judgment in favor of all of the defendants and dismissed plaintiffs' claims. The trial court also denied plaintiffs' subsequent motion for a JNOV and in the alternative for a new trial. The plaintiffs have appealed and assert eleven assignments of error.

Dismissal of the Jury
During the jury selection in this matter, the plaintiffs urged a Batson objection that was granted by the trial court. That action resulted in writs being filed in this court and the supreme court. The trial was stayed during the pendency of those writs. When the trial reconvened in April, approximately three months after the initial jury selection, the trial court informed the parties and their counsel that the eleven jury members that had been seated prior to the Batson objection had been dismissed on the court's own motion. Plaintiffs assign error to the trial court's dismissal of the eleven jury members who had already been chosen to sit at the trial of this matter.
Apparently, the trial court decided that the jury members, some of whom were LSU students nearing final exams at the time the trial reconvened, would be aggrieved by the inevitable and lengthy delay caused by the writ actions. To prevent undue hardship to these jurors, the trial court dismissed the jury, and selection began anew when the trial reconvened in April. Plaintiffs now allege they were prejudiced by the trial court's action that they claim was an abuse of its discretion.
Interestingly, the remedy plaintiffs seek for this alleged error by the trial court is the very action of which they now complain, i.e., the selection of a new jury. Given that this is the remedy sought by plaintiffs, we do not find that they were prejudiced by the trial court's action in dismissing those jurors aggrieved by the delay in the proceedings. Furthermore, the trial court has great discretion in the conduct of the proceedings before it, and only upon a showing of a gross abuse of that discretion will appellate courts intervene. Pino v. Gauthier, 633 So.2d 638, 648 (La.App. 1 Cir.1993), writs denied, 94-0243 (La.3/18/94); 634 So.2d 858 and 94-0260 (La.3/18/94); 634 So.2d 859.
Given the length of the delay occasioned by the taking of writs during the jury selection, and the particular needs of the members selected that were made known to the trial judge, we do not find any abuse of the trial court's discretion in dismissing them during the pendency of the writ actions. This assignment is without merit.

Claim for Punitive Damages
Plaintiffs' action includes a claim for punitive damages pursuant to La. C.C. Art. 2315.3[3], based on their assertion that the local anesthetic as used in this case was a "hazardous or toxic substance." Plaintiffs' assignments of error numbers 2 and 5 address the trial court's refusal to allow the introduction of evidence regarding punitive damages so the jury, as trier of fact, could determine whether Citanest, as used in this case, was a hazardous or toxic substance. However, the issue of punitive damages is moot in the absence of a finding that the administration of Citanest caused the miscarriage. For reasons detailed herein, we find the jury's rejection of causation amply supported by the record; *382 therefore, we do not reach the issue of punitive damages.

Expert Testimony of Dr. Francis Wiggins
Dr. Francis Wiggins, an expert witness on behalf of the defendants, is a practicing dentist who also has a Ph.D. in pharmacology. Plaintiffs contend the trial court erred in allowing the expert testimony of Dr. Wiggins because "at the time of the trial, she had never testified before in any court of law as an expert and at the time of the incident, had only been in practice for a short period of time." Additionally, plaintiffs complain that the testimony of Dr. Wiggins was cumulative and repetitive and unduly prejudicial to plaintiffs. Interestingly, the record reveals that Dr. Wiggins was first employed by the plaintiffs to review the literature on Citanest and render an opinion. Plaintiffs chose not to retain Dr. Wiggins nor use her report. Yet now, plaintiffs complain that Dr. Wiggins should not have been accepted as an expert.
The trial court has great discretion in determining whether to qualify a witness as an expert, and such discretion will not be disturbed on appeal in the absence of manifest error. Schwamb v. Delta Air Lines, Inc., 516 So.2d 452, 459 (La.App. 1 Cir.1987), writ denied, 520 So.2d 750 (1988). The record reveals Dr. Wiggins has the relevant qualifications, education and training to be an expert in this case. The fact that she has not testified before as an expert witness or that she has not been in practice very long does not diminish or discredit her qualifications. Additionally, the methodology she employed complies with the requirements of Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Finally, there is no merit to plaintiffs' claim that her testimony was cumulative and unduly prejudicial. Dr. Wiggins was the only expert to testify from both a dental and a pharmacological perspective. Given her extensive credentials as well as the uniqueness of her testimony, Dr. Wiggins' expert testimony was relevant and admissible and the trial court did not err in allowing it.

Evidence of Prior Infections
Prior to trial, plaintiffs filed a motion in limine seeking to disallow any evidence "concerning the prior medical history of Diane Robinson and any infections she may have suffered." The trial court denied the motion. Plaintiffs now argue such evidence was unduly prejudicial and did nothing other than to confuse the true issue, "whether the death of Michael Robinson was due to the administration of Prilocaine."
The heart of the issue regarding liability in this case is what caused Mrs. Robinson's miscarriage; there is no evidence more relevant to this issue than that of Mrs. Robinson's prior medical history as well as her physical condition at the time of the miscarriage, particularly regarding gynecological infections. The record contains expert testimony which establishes that evidence regarding prior infections would support alternative theories of possible causes of Mrs. Robinson's miscarriage. Thus, the evidence sought to be excluded by the plaintiffs is highly relevant to the core issue in this case, and the plaintiffs have failed to show any undue prejudice resulting from its admission.

Adverse Reaction Reports
During the trial, the trial court refused to allow plaintiffs to introduce evidence of reported adverse reactions to the drug Citanest. Plaintiffs assign error to the exclusion of this "clearly relevant and helpful evidence" claiming that such reports are critical to "knowledge of the drug's affect (sic) on individuals." We find plaintiffs' claim of relevance regarding these reports is overly broad. While adverse reaction reports can be relevant and helpful, in this case, the only relevant ones would be those where Citanest caused fetal demise in other individuals. The record *383 reveals that the only reported case where Citanest allegedly had the adverse effect of fetal demise is that of the Robinson fetus. No other case of miscarriage following the administration of Citanest has been reported. Thus, any other adverse reaction reports pertaining to the use of Citanest are wholly irrelevant to this matter and were properly excluded.

Expert Testimony of Dr. Wilkinson
Plaintiffs assign error to the trial court's allowing one of the defendants, Dr. Wilkinson, to be qualified as an expert because "[t]here is an inherent bias in allowing a defendant to be an expert in his own case." However, plaintiffs cite no legal support for this proposition, nor do we know of any. In fact, the trial court cited authority for allowing Dr. Wilkinson's expert testimony: "The fact that a witness is a party or an employee of a party does not preclude [the witness's] qualification as an expert because the potential bias of the witness may be explored on cross-examination and argued to the jury." Ealy v. Bill Allen Dodge, Inc., 466 So.2d 52, 56 (La. App. 2 Cir.1985).
We find the trial court's allowing Dr. Wilkinson to testify as an expert based on his qualifications was well within its broad discretion and this assignment of error is meritless.

Finding of Informed Consent
The plaintiffs also contend the jury erred in finding Mrs. Robinson gave "informed consent" to the administration of the drug Prilocaine. As with the issue of punitive damages, the issue of informed consent is moot in the absence of a finding of causation. Because the jury found no causal relationship between the administration of the Citanest and the demise of the Robinson fetus, the issue of informed consent is moot.

Verdict Form
Plaintiffs allege that one of the jurors expressed some confusion about the verdict form, and they assign error to the trial court's refusal to explain the verdict form to this juror. At the outset, we note that the plaintiffs' failure to make a contemporaneous objection to the verdict form or to the trial court's response to the juror's question serves as a waiver and they are precluded thereby from complaining about it now. In any event, we find no basis in fact for plaintiffs' contention that one of the jurors was confused by the verdict form. After the jury instructions were read to the jury, one juror asked the trial judge a question regarding which of the listed items were the three things which must be proven by the plaintiffs. The trial court answered the juror but would not elaborate, instructing the juror to first get together with the rest of the jury and discuss the matter. He also told the juror that if they had any questions or problems after discussing it together, they could come back and submit a specific question to the court. The jury then retired for deliberations and did not return to the court with a question. Therefore, it can be assumed that any questions or concerns had by that particular juror were resolved after discussion with the entire panel. Furthermore, our review of the jury instructions and the verdict form reveals that neither is misleading nor confusing and both fairly reflect the legal principles applicable to this case. Thus, this assignment is without merit.

Legal Causation
In their last two assignments of error, the plaintiffs argue that the jury erred in finding the administration of Citanest did not cause the miscarriage and that the trial court erred in refusing to grant a JNOV or new trial.
Although the opinions of the experts for the plaintiffs differed from that of those testifying on behalf of the defendants, all of the experts testified that this is the first matter known to them in which the death of a fetus was allegedly associated with a prior administration of a local anesthetic. *384 The experts also all agreed that miscarriages are not uncommon and the cause of most of them remains unknown. Further, there was a general consensus among the experts that it is not uncommon for pregnant women, particularly in the second trimester of pregnancy, to have dental procedures done.
The record also revealed that Mrs. Robinson had certain risk factors for a miscarriage including a medical history of vaginal, cervical, yeast and urinary tract infections, prior use of an intrauterine device for contraception (IUD), her age at pregnancy which was over 35, and a progesterone deficiency. The record also reveals that she suffered another miscarriage five months subsequent to the one at issue in this case, and a pregnancy subsequent to that which was sustained by the use of supplemental progesterone.
Dr. Howard Kirschner, a dentist in New York, Dr. Steinberger, an obstetrician/gynecologist in New York, and Dr. Schraeger, a toxicologist in Massachusetts all testified as experts on behalf of the plaintiffs and were each of the opinion that the administration of Citanest was a contributing cause in the demise of the Robinson's fetus. On the other hand, defendant witnesses, Dr. Hayes and Dr. Sparks, Mrs. Robinson's treating obstetricians/gynecologists, Dr. Wilkinson, her treating dentist, Dr. Blunt, an expert in oral surgery, Dr. Brent, pediatrician, Dr. Wiggins, dentist and pharmacologist, Dr. Vassallo, an expert in physiology and pharmacology and Dr. Robichaux, an expert in maternal fetal medicine, all testified that the Citanest given to Mrs. Robinson in conjunction with her root canal was the appropriate dosage and anesthetic for a pregnant patient in her second trimester of pregnancy. In fact, some of these experts opined that Citanest was one of the safest local anesthetics on the market. These experts all further testified that the dosage was too low to have been a contributing factor in the fetal demise, and in any event, it was not the cause of Mrs. Robinson's miscarriage.
Finally, the record established that the size of the fetus at the time of miscarriage was approximately one seventh the size of its gestational age, suggestive that the fetus had intrauterine growth retardation. In fact, based on the medical records, defendants' experts opined that the cause of the miscarriage was poor placentation, which led to a "slow death" to the fetus over a 17-18 week period as a result of a gradual insufficiency of blood supply to the fetus that preceded the dental procedure.
Thus, although the record contains conflicting opinions, there is sufficient evidence of an alternative cause of Mrs. Robinson's miscarriage. Furthermore, it was the jury's task to make credibility determinations in assessing the conflicts in opinion and the evidence in the record. Obviously, the jury gave more credibility to the experts testifying on behalf of the defendants than to those who testified for the plaintiffs. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Canter v. Koehring, 283 So.2d 716 (La.1973). Since there is a sufficient factual basis to support the jury's decision, it is not manifestly erroneous and will not be overturned.
For these same reasons, we find no merit to plaintiffs' argument that the trial court erred in refusing to grant a JNOV or new trial.

Frivolous Appeal
In brief, defendant, Astra Pharmaceutical Products, Inc., seeks damages for frivolous appeal "because plaintiffs' appeal presents no serious legal questions and is unquestionably frivolous." However, our review of the record reveals that Astra did not appeal nor did it answer the plaintiffs' appeal. Therefore, it is precluded from seeking any modification or relief in this appeal.
*385 Accordingly, for all the foregoing reasons, the judgment of the trial court that adopted the jury verdict in favor of the defendants dismissing plaintiffs' claims is hereby affirmed. All costs of this appeal are assessed to the plaintiffs.
AFFIRMED.
NOTES
[1] Retired Judge Ian W. Claiborne serving as judge pro tempore by order of the Supreme Court of Louisiana dated February 22, 2000.
[2] The plaintiff, Edward A. Robinson, is a practicing attorney; however, he goes by the title "Dr.".
[3] This article was repealed in 1996.