809 So.2d 983 (2001)
J. Jude QUEBEDEAUX and Wendy Quebedeaux
v.
The DOW CHEMICAL COMPANY and John Dandridge, Reliance Insurance Co. and Dorinco Reinsurance Co.
No. 2000 CA 0465.
Court of Appeal of Louisiana, First Circuit.
May 11, 2001.
Rehearing Denied July 6, 2001.
Writ Granted November 16, 2001.
*985 Neil D. Sweeney, Baton Rouge, Louisiana, for plaintiffs/appellees, J. Jude Quebedeaux and Wendy Quebedeaux.
Gregory E. Bodin, Stewart Tharp, Baton Rouge, Louisiana, for defendant/appellant, Dow Chemical Co.
Karen E. Dugas, Plaquemine, Louisiana, for defendant/appellant, Dow Chemical Co.
Before: WHIPPLE, KUHN, and DOWNING, JJ.
KUHN, J.
This is an appeal from a judgment in favor of the plaintiffs/appellees, Jude and Wendy Quebedeaux ("plaintiffs"), and against the defendant/appellant, the Dow Chemical Company ("Dow") as well as defendant, John Dandridge ("Dandridge")[1] for damages resulting from an altercation between Jude Quebedeaux ("Quebedeaux") and Dandridge at the place of their employment. For the following reasons, we affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Quebedeaux and Dandridge were both employed by Dow as operators in the making of polyethylene, or plastic, pellets. On August 28, 1992, Quebedeaux, an eleven-year employee, was working in the outside extrusion area and Dandridge, a sixteen-year employee, was working inside. Both were working the same shift and were co-employees working at the same level. Every two weeks they would switch working the inside and outside positions in the extrusion area. It was the outside man's job to make the transfer of pellets when the hopper, in which they were stored, became full. To make the transfer, the employee had to go to the destination of where the pellets were being transferred to confirm that the new storage area was empty. That person had to call the inside operator to let him know that the transfer could be made.
On the day of the incident, Quebedeaux was asked by Dandridge to carry paperwork to another building to begin the transfer of the plastic pellets from one storage unit to another. When Quebedeaux went to get the paperwork from inside, he saw that Dandridge was having trouble printing something on his computer. Quebedeaux offered to help Dandridge, who got up from his chair allowing Quebedeaux to sit down. A heated verbal argument ensued between Quebedeaux and Dandridge, which culminated in a physical altercation between the two men. Dandridge went behind Quebedeaux, still sitting in the computer chair, and grabbed him around his neck, causing *986 Quebedeaux to fall to the ground. Pursuant to Dow's policy of no fighting in the workplace, both men were fired.
Plaintiffs filed this suit against Dandridge and Dow alleging that Dandridge was liable for all damages they suffered as a result of Dandridge's intentional actions against Quebedeaux.[2] Those damages included: 1) physical pain and suffering, 2) mental anguish as a result of both the altercation and plaintiffs termination, 3) past lost wages, and 4) future lost wages. Plaintiffs also alleged that Dow was liable to plaintiffs for the damages caused by the actions of its employee, Dandridge, by virtue of the legal requirement of respondent superior. Quebedeaux's wife, Wendy, sued for loss of consortium.
Dow filed a motion for partial summary judgment on April 13, 1999, asserting that under Louisiana law, an employer is free to terminate an employee at any time and for any reason without incurring liability for the discharge and, therefore, it cannot be liable for damages flowing from the termination of Quebedeaux. The motion was denied by the trial court and writs were denied by this court and the supreme court.
The case was tried by jury on June 21 and 22, 1999. Following the presentation of plaintiffs case, Dow moved for a directed verdict, which was denied. The jury subsequently rendered a verdict in favor of plaintiffs, finding that Dandridge committed a battery upon Quebedeaux and that Quebedeaux suffered damages as a result of the battery. The jury also determined that the percentage of fault attributable to Quebedeaux was 35% and that the percentage of fault attributable to Dandridge was 65%. The jury additionally determined that Dow was liable for the intentional tort committed by Dandridge and awarded Quebedeaux damages for Dandridge's conduct as follows:

General damages
 (pain, suffering and mental anguish) $48,500.00
Past lost earnings and benefits $45,000.00
Future lost earnings $50,000.00
Future lost benefits $80,000.00

The jury further determined that Wendy Quebedeaux suffered a loss of consortium and awarded her damages in the amount of $15,000.00. Accordingly, judgment was signed on October 4, 1999, against Dow and Dandridge and in favor of Jude Quebedeaux in the amount of $145,275.00 and in favor of Wendy Quebedeaux in the amount of $9,750.00, plus interest and costs.
Dow appealed raising five assignments of error. Dow asserts that plaintiff's award for past and future wages and benefits resulted from his termination and because Quebedeaux was an employee at will, and could have been terminated at any time, 1) the trial court erred in denying Dow's motion for summary judgment, 2) the trial court erred in denying Dow's motion for directed verdict, which allowed plaintiffs claim for past and future lost wages and benefits to go to the jury, and 3) the jury erred in awarding plaintiff damages for past and future lost wages and benefits. Dow also asserts that 4) the jury's award of $48,500.00 for general damages was an abuse of its discretion, and 5) the jury's award of $15,000.00 for loss of consortium was excessive.

DISCUSSION

A. Lost wages and benefits

(Assignments of Error Numbers One through Three)
An appellate court may reverse a fact-finder's determinations only when it is *987 found from the record that a reasonable factual basis does not exist for the findings and that the record establishes the findings were manifestly erroneous and clearly wrong. Allen v. Payne and Keller Co., Inc., 96-2326, p. 3 (La.App. 1st Cir.4/8/98), 710 So.2d 1138, 1140, writ denied, 98-1821 (La.10/16/98), 726 So.2d 908; Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Id.
The Louisiana Workers' Compensation Act provides for the payment of compensation if an employee sustains personal injury as the result of an accident arising out and in the course of employment. La.R.S. 23:1031. As a general rule, the rights and remedies granted to an employee under the act are exclusive of all rights and remedies against the employer, any officer or principal of the employer, or any co-employee. La.R.S. 23:1032. However, an exception to this rule is that the act does not affect the liability of an employer, principal, officer, or co-employee resulting from an "intentional act." Jackson v. Frisard, 96-0547, p. 7 (La.App. 1st Cir.12/20/96), 685 So.2d 622, 626, writs denied, 97-0201, 97-0193 (La.3/14/97), 689 So.2d 1386, 1387. Nothing shall prevent an employee from recovering from his employer under general tort law for an intentional tort. Caudle v. Betts, 512 So.2d 389, 390 (La.1987); Bazley v. Tortorich, 397 So.2d 475, 482 (La.1981).

1. The Battery
The intentional tort of battery is a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact. Caudle v. Betts, 512 So.2d at 391.
Quebedeaux testified that at the beginning of their shift, he received a call over the intercom from Dandridge asking him to take the paperwork across the street in order to make a transfer. Quebedeaux testified that he first made a call to his wife and then went to get the papers. He saw that Dandridge was having trouble at his computer and offered to help. Dandridge got up and Quebedeaux sat down. Quebedeaux testified that he and Dandridge had a good working relationship, but when he was able to get the printer to work for Dandridge, Dandridge began cursing at him about the transfer. Quebedeaux stated he cursed back. He then heard the shift supervisor, Harold Himel, Jr., say, "John, don't do that." Dandridge got Quebedeaux in a chokehold with his arm around his neck, and pushed Quebedeaux into the computer desk. Quebedeaux testified he could not breathe and Dandridge twisted and pulled him off the chair. Quebedeaux stated he began to fall and Dandridge therefore had to let go of him. Before he walked away, Dandridge told Quebedeaux that he was going to kill him. Quebedeaux testified that he never threatened or hit Dandridge and that he did not fight or respond to Dandridge because he knew he would lose his job.
Dandridge testified, however, that there was an ongoing problem between he and Quebedeaux in that Quebedeaux would take his time about performing his job. Dandridge stated Quebedeaux would do his job when he decided to do it, rather then when it needed to be done. Dandridge stated that when Quebedeaux was asked to take the paperwork across the street, Quebedeaux first made a telephone call and then began a conversation about a recent hurricane. Dandridge testified he then asked Himel to take the papers over for him and that was when Quebedeaux began to use profanity. Dandridge testified that he was not the first to use curse words and that he did not do anything he considered to be a fight. He walked over *988 to Quebedeaux and just pulled him around in the chair. He stated he grabbed Quebedeaux around the head. Quebedeaux slid out of the chair and that was the end of it.
Himel, a twenty-two year employee at Dow, testified that he walked in the room where Dandridge was working and saw that he was having difficulty at his computer. He stated he started talking to Dandridge about the hurricane when Quebedeaux joined in the conversation. Quebedeaux saw that Dandridge was having trouble and asked Dandridge to move so he could help him. Himel testified that Dandridge told Quebedeaux that he needed to make the transfer and Quebedeaux responded that he would do so in a minute. Dandridge repeated the request and Quebedeaux again stated that he would take the paperwork over in a minute. Dandridge then said he would ask Himel to make the transfer. Himel did not remember who spoke first, but words were exchanged which became louder and more vulgar. When Dandridge started to move toward Quebedeaux, Himel put his hands up to try to stop Dandridge. Dandridge did not say anything but put his arm around Quebedeaux's neck and tightened it. Quebedeaux grabbed Dandridge's arm to pull it away, but Himel could see that Quebedeaux was getting weak and he fell to the floor. Dandridge let go and walked away. Himel called plant security. If there had been no physical violence, Himel stated that he would not have called security.
Dow concedes that Dandridge committed a battery upon Quebedeaux. Furthermore, the record supports the jury's determination that Dandridge committed the battery.

2. Vicarious Liability
La.C.C. art. 2320 provides the basis for holding an employer liable for the actions of its employees:
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
Thus, an employer may incur the vicarious liability for the intentional acts of employees. Jackson, 96-0547 at p. 10, 685 So.2d at 627; Jones v. Thomas, 426 So.2d 609, 612 (La.1983). The test for employer liability was established by the supreme court in LeBrane v. Lewis, 292 So.2d 216 (La.1974), where a supervisor became dissatisfied with an employee, fired him, ordered him to leave the workplace and escorted him to the door. The supervisor and LeBrane argued vigorously. The argument escalated and the supervisor stabbed LeBrane. The court held that the firing of the employee, which was the root cause of the hostility, was employment-related. Vicarious liability was imposed and the court determined that a fight between a hotel supervisor and an employee he had terminated, resulted in a stabbing, was "employment-rooted." The court held that an employer is responsible for an employee's intentional tort when the conduct is so closely connected in time, place, and causation to the employment duties that it constitutes a risk of harm attributable to the employer's business. LeBrane, 292 So.2d at 218.
In the present case, it is undisputed that the battery was committed within the course and scope of Dandridge's employment. The intentional tort occurred on the employment premises and during the hours of employment. Furthermore, the dispute arose over employment issues. Dandridge did not think Quebedeaux performed his job efficiently and believed Quebedeaux had a problem taking orders from him. The argument between Dandridge and Quebedeaux was employment-rooted.
*989 Dow concedes that it is vicariously liable, through the doctrine of respondeat superior, for 65% of all damages sustained by plaintiff as a result or consequence of any physical injury caused by the battery. Dow strongly urges, however, that it is not responsible for any damages plaintiff suffered as a result of his termination. Specifically, Dow urges that Quebedeaux should not be able to recover for past and future lost wages arising out of his termination. Dow emphasizes that it possessed and exercised its unbridled right to terminate Quebedeaux without cause.
While we agree that plaintiff was an employee at will who could have been fired at any time, plaintiff is entitled to recover for all damage suffered by plaintiff as a result of the battery. La.C.C. art. 2315.[3] Quebedeaux is not making a wrongful discharge claim, but a claim for damages resulting from a battery. Dow's liability flows from the intentional tort committed by its employee by virtue of the doctrine of respondeat superior. Dow's liability is that of an employer for the tort damages caused by its employee, John Dandridge. Thus, the threshold question is not whether Dow is liable for damages, but whether Dandridge is. And Dow has conceded that he is.

3. The Consequences
A person who commits an intentional tort is liable for all consequences of his act, whether they are foreseeable or not. Caudle v. Betts, 512 So.2d at 392. The Louisiana Supreme Court, in the Caudle case, stated:
The defendant's liability for the resulting harm extends, as in most other cases of intentional torts, to consequences which the defendant did not intend, and could not have reasonably foreseen, upon the obvious basis that it is better for unexpected losses to fall upon the intentional wrongdoer than upon the innocent victim.
Caudle v. Betts, 512 So.2d at 392.
Quebedeaux testified that what he wants is his job at Dow back, which he acknowledges will not happen. It took Quebedeaux several months to find a job, during which time he received unemployment benefits. Dow acknowledges, and the evidence is unrefuted, that Quebedeaux was unable to find work that paid a salary comparable to his salary at Dow. While at Dow, he had life, health, and dental insurance, as well as retirement benefits. Quebedeaux testified that in his current employment he has no retirement benefits or dental insurance. He testified he had to put his plans for a family on hold because of his diminished financial status causing him great emotional distress.
Dr. Randolph Rice, an expert in the field of economics, calculated Quebedeaux's lost wages and earning capacity. Rice first determined Quebedeaux lost past wages in the amount of $127,178.00, being the difference between what Quebedeaux actually earned, from the date of the altercation to the date of trial, and what he calculated Quebedeaux would have made if he remained at Dow. Rice then calculated Quebedeaux's future lost wages. He testified that Quebedeaux had a future work life of 23.62 years, from the date of trial, based on labor statistics. Rice calculated that he would be making $49,855.00 at the time of trial if Quebedeaux had remained at Dow. He actually was earning $38,927.85. Calculating the difference between what Quebedeaux would be making at Dow and what he actually was making, factoring in raises over the next 23.62 years and a discount rate of 5¾%, Rice concluded Quebedeaux's *990 future lost wages to be $200,191.00.
Rice also computed Quebedeaux's lost retirement benefits. Using the formula in Dow's defined retirement plan, with wage projections for Quebedeaux, less what Quebedeaux would have invested into the plan, and discounting the figure, Rice calculated that Quebedeaux lost $105,722.00 in retirement benefits.
The jury expressly found that Quebedeaux suffered lost wages and benefits as a result of the battery committed by Dandridge. Despite Dow's contention on appeal that lost wages are not a recoverable item of damage, Dow made no objection to the jury instructions or the jury verdict form listing past lost earnings and benefits, future lost earnings, and future lost benefits as possible damages. Dow's failure to make a contemporaneous objection to the jury instructions or to the jury verdict form serves as a waiver and it is precluded from raising the issue for the first time on appeal. See La.C.C.P. art. 1793; Robinson v. Astra Pharmaceutical Products, Inc., 98-0361, 98-0362, p. 7 (La. App. 1st Cir.3/31/00), 765 So.2d 378, 383, writ denied, XXXX-XXXX (La.6/2/00), 763 So.2d 607.
Furthermore, we find Rice's uncontroverted economic testimony and the documentary evidence supports the jury's award of $45,000.00 for past lost earnings, $50,000.00 for future lost earnings and $80,000.00 for future lost benefits. We can find no abuse of the jury's vast discretion in making these awards. Dow's first three assignments of error are without merit.

B. General Damages

(Assignment of Error Number Four)
Dow also argues that the jury's award of $48,500.00 in general damages to Quebedeaux was excessive. Dow asserts Quebedeaux is only entitled to damages for any physical injury, and not for emotional distress or mental anguish since Dow could have fired Quebedeaux at any time. Therefore, according to Dow, an appropriate award in this case would be $3,000.00, as Quebedeaux did not suffer any appreciable injury.
General damages are those which may not be fixed with pecuniary exactitude. They involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitively measured in monetary terms. Odom v. Claiborne Elec. Co-op., Inc., 623 So.2d 217, 221 (La.App. 2d Cir.), writ denied, 629 So.2d 1171 (La. 1993).
Much discretion is left to the judge or jury in the assessment of general damages. La.C.C. art. 2324.1. In reviewing an award of general damages, the court of appeal must determine whether the trier of fact has abused its much discretion in making the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Andrus v. State Farm Mut. Auto. Ins. Co., 95-0801, p. 8 (La.3/22/96), 670 So.2d 1206, 1210. Because discretion vested in the trial court is "great," and even vast, an appellate court should rarely disturb an award of general damages. Id.
Again, Dow did not object to the jury instructions or jury verdict form, both *991 of which described general damages as including pain, suffering, and mental anguish. Dow cannot, for the first time on appeal, complain that pain, suffering, and mental anguish are not part of the recoverable general damages. See La.C.C.P. art. 1793; Robinson v. Astra Pharmaceutical Products, Inc., 98-0361 at p. 7, 765 So.2d at 383.
Furthermore, from the evidence, we can deduce no abuse of the vast discretion of the jury. Quebedeaux testified that the incident caused great emotional distress. His family plans were put on hold and his wife became the provider of the household. He and his wife testified that he has back problems that he did not have prior to the altercation. But Quebedeaux did testify he suffered no real physical injury. Wendy Quebedeaux testified as to the emotional trauma she and her husband suffered by not having the income they once had. She testified that their lives changed dramatically. Mrs. Quebedeaux stated that the incident changed her husband and that he is still emotionally affected. He is withdrawn, becomes depressed, and does not feel he is adequately providing for his family. She further testified that he was made to feel like a criminal, as though he had done something wrong.
Considering the foregoing, and the record as a whole, and mindful of the principles that govern our review of this matter, we are unable to say that the jury abused its discretion in its award general damages herein. We, therefore, decline to disturb the $48,500.00 award for general damages.

C. Loss of Consortium

(Assignment of Error Number Five)
In its final assignment of error, Dow contends that the jury's award of $15,000.00 to Wendy Quebedeaux for loss of consortium was excessive. Dow asserts that Mrs. Quebedeaux is not entitled to any damages for loss of consortium.
Damages under La.C.C. art. 2315 may include loss of consortium, service, and society. The elements of a spouse's loss of consortium claim include loss of love and affection, companionship, impairment of sexual relations, material services, support, aid and assistance, and felicity. Farley v. State Through Dept. of Transp. and Dev., 96-0538, p. 7 (La.App. 1st Cir.9/27/96), 680 So.2d 750, 754, writ denied, 96-2604 (La.12/13/96), 692 So.2d 1065. Proof of any of these elements is sufficient for an award of consortium. Frazer v. St. Tammany School Board, 99-2017, p. 7 (La.App. 1st Cir.12/22/00), 774 So.2d 1227, writ denied, 787 So.2d 1001; Odom v. Claiborne Electric Cooperative, Inc., 623 So.2d 217, 226 (La.App. 2d Cir.), writ denied, 629 So.2d 1171 (La.1993).
The jury's award for loss of consortium is supported by testimony from the plaintiffs. Mrs. Quebedeaux testified about the dramatic change in their circumstances as well as the lasting change in her husband. We find no abuse of discretion in the jury's determination that Wendy Quebedeaux suffered loss of consortium damages. Nor can we say that the jury abused its great and vast discretion in its award of $15,000.00 for her loss.

CONCLUSION
We find no error in the jury's finding that Dandridge committed a battery upon Quebedeaux. And because the incident was employment-rooted, closely connected in time, place and causation to Dandridge's employment duties, the jury did not err in finding Dow liable in tort to Quebedeaux for all consequences of Dandridge's act, whether they were foreseeable or not. Additionally, the economic testimony and documentary evidence supports the awards for lost earnings, lost future earnings and future lost benefits. The award for general damages to Quebedeaux *992 is also supported by the record as is the award to Wendy Quebedeaux for loss of consortium. Accordingly, for the reasons stated herein, the trial court's judgment of October 4, 1999, against Dow and Dandridge and in favor of Jude Quebedeaux in the amount of $145,275.00 and in favor of Wendy Quebedeaux in the amount of $9,750.00, is affirmed. Costs are assessed against the defendant/appellant, Dow Chemical Company.
AFFIRMED.
WHIPPLE, J., concurred, in part, dissented in part, and assigned reasons.
WHIPPLE, J., concurs in part and dissents in part for reasons assigned:
While the employer was vicariously liable for the damages attributable to the battery, there is no basis for imposing liability for the wage loss claim, which was not reasonably related to the battery.
NOTES
[1] Dandridge did not appeal the trial court's judgment and is not a party to this appeal.
[2] Also named defendants in plaintiffs' amended petition were Reliance National Insurance Company and Dorinco Reinsurance Company. Neither defendant is involved in this appeal.
[3] La.C.C. art. 2315 provides, in part, that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.