LWHIPPLE, J.
This case is before us on remand from the Supreme Court. The Supreme Court granted Dow’s application for writs of cer-tiorari and review,[1] reversed and set aside the portion of the previous opinion rendered May 11, 2001[2] pertaining to plaintiffs’ damages, and remanded to this court to determine the proper quantum for plaintiffs’ damages.[3] The essential facts and procedural history, as set forth in this court’s previously published opinion, are as follows.
FACTS AND PROCEDURAL HISTORY
Quebedeaux and Dandridge were both employed by Dow as operators in the making of polyethylene, or plastic, pellets. On August 28, 1992, Quebedeaux, an eleven-year employee, was working in the outside extrusion area and Dandridge, a sixteen-year employee, was working inside. Both *129 were working the same shift and were co-employees working at the same level. Every two weeks, they would switch working the inside and outside positions in the extrusion area. The outside man’s job was to make the transfer of pellets when the hopper, in which the pellets were stored, became full. To make the transfer, the employee had to go to the area where the pellets were being transferred to confirm that the new storage area was empty. That person had to call the inside operator to let him know that the transfer could be made.
On the day of the incident, Quebedeaux was asked by Dandridge to carry paperwork to another building to begin the transfer of the plastic pellets from one storage unit to another. When Quebe-deaux went to get the paperwork from inside, he saw that Dandridge was having trouble printing something on his computer. Quebedeaux offered to help Dan-dridge, who got up from his chair allowing IsQuebedeaux to sit down. A heated verbal argument ensued between Quebedeaux and Dandridge, which culminated in a physical altercation between the two men. Dandridge went behind Quebedeaux, still sitting in the computer chair, and grabbed him around his neck, causing Quebedeaux to fall to the ground. Pursuant to Dow’s “zero tolerance” policy regarding fighting in the workplace, both men were fired.
Plaintiffs[4] filed this suit against Dan-dridge and Dow alleging that Dandridge was liable for damages suffered as a result of Dandridge’s intentional actions against Quebedeaux.[5] The alleged damages included: 1) physical pain and suffering, 2) mental anguish as a result of both the altercation and plaintiffs termination, 3) past lost wages, and 4) future lost wages. Plaintiffs also alleged that Dow was liable to plaintiffs for the damages caused by the actions of its employee, Dandridge, under the legal theory of respondent superior.
Dow filed a motion for partial summary judgment on April 13, 1999, asserting that under Louisiana law, an employer is free to terminate an employee at any time and for any reason without incurring liability for the discharge and, therefore, it cannot be liable for damages flowing from the termination of Quebedeaux’s employment. The motion was denied by the trial court and writs were denied by this court and the Supreme Court.
The case was tried by a jury on June 21 and 22, 1999. Following the presentation of plaintiffs case, Dow moved for a directed verdict, which was denied. The jury subsequently rendered a verdict in favor of plaintiffs, finding that Dandridge had committed a battery upon Quebedeaux and that Quebedeaux suffered damages as a result of the battery. The jury also determined that the | ¿percentage of fault attributable to Quebedeaux was 35% and that the percentage of fault attributable to Dandridge was 65%. Concluding that Dow was liable for the intentional tort committed by Dandridge, the jury awarded Quebedeaux damages for Dandridge’s conduct as follows:
General damages: (pain, suffering and mental anguish) $48,500.00
Past lost earnings and benefits: $45,000.00
Future lost earnings: $50,000.00
Future lost benefits: $80,000.00
The jury further determined that Wendy Quebedeaux had suffered a loss of consortium and awarded her damages in the *130 amount of $15,000.00. Accordingly, judgment was signed on October 4, 1999, against Dow and Dandridge and in favor of Jude Quebedeaux in the amount of $145,275.00 and in favor of Wendy Quebe-deaux in the amount of $9,750.00, plus interest and costs.
Dow appealed, raising five assignments of error.[6] Dow asserted that Quebe-deaux’s award for past and future wages and benefits resulted solely from his termination. Thus, because he was an employee at will, subject to termination at any time, 1) the trial court erred in denying Dow’s motion for summary judgment, 2) the trial court erred in denying Dow’s motion for directed verdict, which allowed his claim for past and future lost wages and benefits to go to the jury, 3) the jury erred in awarding him damages for past and future lost wages and benefits, 4) the jury’s award of $48,500.00 for general damages was an abuse of its discretion, and 5) the jury’s award of $15,000.00 for loss of consortium was excessive.
|..DISCUSSION
In the previous opinion rendered by this court, the majority determined that Dow was liable for the intentional torts of its employees and that all damages that flowed from that intentional tort by virtue of the doctrine of respondeat superior, stating:
While we agree that plaintiff was an employee at will who could have been fired at any time, plaintiff is entitled to recover for all damage suffered by plaintiff as a result of the battery. La.C.C. art. 2315. Quebedeaux is not making a wrongful discharge claim, but a claim for damages resulting from a battery. Dow’s liability flows from the intentional tort committed by its employee by virtue of the doctrine of respondeat superior. Dow’s liability is that of an employer for the tort damages caused by its employee, John Dandridge. Thus, the threshold question is not whether Dow is liable for damages, but whether Dandridge is. And Dow has conceded that he is. (Emphasis added.)
Quebedeaux v. Dow Chemical Co., 2000-0465, pp. 8-9 (La.App. 1st Cir.5/11/01), 809 So.2d 983, 989. Finding no abuse of discretion by the jury, the majority affirmed the jury’s damage awards, with this author dissenting from the award of such damages for plaintiffs termination of employment.
After granting writs, the Supreme Court rendered a majority opinion wherein the Court determined that the employment-at-will doctrine bars recovery of damages arising from the termination of an employee under these circumstances. Quebedeaux v. Dow Chemical Co., 2001-2297, p. 6 (La.6/21/02), 820 So.2d 542, 546.[7] The Supreme Court reversed the appellate court’s affirmation of the lower courts’ damage awards and remanded the case with instructions for the appellate court to reconsider the “proper quantum” for plaintiffs’ damages. Quebedeaux v. Dow Chemical Co., 2001-2297 at p. 7, 820 So.2d at 546. In doing so, the Supreme Court rejected the plaintiffs’ argument, and this court’s prior holding, that |fiDow is vicariously hable for the damages arising out of Quebedeaux’s termination (i.e., the argument that “but for the fight” plaintiff would not have been fired). Instead, the Supreme Court held that the employment-at-will doctrine bars liability for such dam *131 ages arising out of the termination of an employee.[8]
The Supreme Court further stressed that its reversal was limited in that “an employee may still apply general principles of tort law to hold his employer vicariously liable for other damages arising out of an intentional tort committed by his employee.” Quebedeaux v. Dow Chemical Co., 2001-2297 at p. 6, 820 So.2d at 546. Our interpretation of the Supreme Court’s instruction on remand is that we are mandated to review the case bearing in mind, 1) that the employer is vicariously liable only for the damages directly arising out of the intentional tort committed by the co-employee, and 2) that the employer is not liable for any damages arising from or incidental to the termination after the intentional tort committed by the co-employee. Otherwise stated and applied in the instant case, Dow is liable for the damages suffered by Quebedeaux as a result of the battery inflicted by its employee, Dandridge; however, Dow is not responsible for any damages arising from or associated with Quebedeaux’s termination, which resulted from his involvement in the altercation with Dandridge in violation of Dow’s established policy, requiring termination of employment under such circumstances.
Thus, in accordance with the Supreme Court’s ruling, Dow is liable for the [7general damages suffered by Quebedeaux as a result of the intentional battery inflicted by Dandridge, ie., pain, suffering, and mental anguish. Dow is not responsible, however, for those damages incidental to the termination of Quebedeaux’s termination, ie., past and future lost earnings and benefits.
Bearing these precepts in mind, after completing the review of the record ordered herein, we conclude that $30,000.00 is an appropriate award for Quebedeaux’s damages, considering the particular circumstances of this case.
Quebedeaux testified that at the beginning of their shift, he received a call over the intercom from Dandridge asking him to take the paperwork across the street in order to make a transfer. Quebedeaux testified that he first made a call to his wife and then went to get the papers. He saw that Dandridge was having trouble at his computer and offered to help. Dan-dridge got up and Quebedeaux sat down. Quebedeaux testified that he and Dan-dridge previously had enjoyed a good working relationship, but when he was not able to get the printer to work for Dan-dridge, Dandridge began cursing at him about the transfer. Quebedeaux stated he cursed back. He then heard the shift supervisor, Harold Himel, Jr., say, “John, don’t do that.” Dandridge placed Quebe-deaux in a chokehold with his arm around his neck, and pushed Quebedeaux into the computer desk. Quebedeaux testified he could not breathe and Dandridge twisted and pulled him off the chair. Quebedeaux stated he began to fall and Dandridge therefore had to let go of him. Before he *132 walked away, Dandridge told Quebedeaux that he was going to kill him. Quebedeaux claimed that he never threatened or hit Dandridge and that he did not fight or respond to Dandridge because he knew he would lose his job.
Himel, a twenty-two year employee at Dow, testified that he walked in the room where Dandridge was working and saw that he was having difficulty at his computer. He stated he started talking to Dandridge about the hurricane when Que-bedeaux joined in the conversation. Que-bedeaux saw that Dandridge was | shaving trouble and asked Dandridge to move so he could help him. Himel testified that Dandridge told Quebedeaux that he needed to make the transfer and Quebedeaux responded that he would do so in a minute. Dandridge repeated the request and Que-bedeaux again stated that he would take the paperwork over in a minute. Dan-dridge then said he would ask Himel to make the transfer. Himel did not remember who spoke first, but words were exchanged which became louder and more vulgar, eventually escalating to a physical encounter. When Dandridge started to move toward Quebedeaux, Himel put his hands up to try to stop Dandridge. Dan-dridge did not say anything but put his arm around Quebedeaux’s neck and tightened it. Quebedeaux grabbed Dandridge’s arm, but Himel could see that Quebedeaux was getting weak and he fell to the floor. Dandridge let go and walked away. Himel called plant security. If there had been no physical violence, Himel stated that he would not have called security.
The intentional tort of battery is a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact. Caudle v. Betts, 512 So.2d 389, 391 (La.1987). Dow concedes that Dandridge committed a battery upon Quebedeaux; thus, the issue is the quantum of damages due.
General damages are those which may not be fixed with pecuniary exactitude. They involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitively measured in monetary terms. Odom v. Claiborne Electric Co-op., Inc., 623 So.2d 217, 221 (La.App. 2d Cir.), writ denied, 629 So.2d 1171 (La.1993).
Wendy Quebedeaux testified that on the day of the incident, she was at home when Mr. Quebedeaux unexpectedly returned home from work early. She testified that Mr. Quebedeaux was visibly upset and shaking, and that she “could |fltell that he was nervous and upset about something.” She further testified that he told her that “he had been attacked at work.” She observed the bruises and marks on her husband resulting from injuries received in the attack, which she described as follows:
His neck was all red, all around his neck. He had little scratches like on his neck. His arm was red.... The next day we noticed he had bruises. He was bruised like on his chest. His neck was bruised, his arm, you know, around his elbow. His hip and his leg, ... all the left side of his body.
When asked about whether her husband had experienced any further problems over a period of time as a result of the injuries received in the attack, she testified:
He still complains every now and then about his back hurting. It’s usually like, he drives a lot on his job. If he’s driving for long periods of time or if he’s standing for long periods of time it’ll give him little bouts of trouble for like two or three days at a time and he has to take medication to help it.
*133 Quebedeaux testified that the incident and the fact that he was escorted off of the premises caused great emotional distress and humiliation. He and his wife testified that he has suffered from back problems that he did not have prior to the altercation. Wendy Quebedeaux testified that the incident changed her husband and that he is still emotionally affected. She further testified that as a result of this incident, he was made to feel like a criminal, as though he had done something wrong.
Considering the parties’ testimony, the medical evidence, and the record as a whole, we conclude that an award of $30,000.00 is adequate under the circumstances to compensate plaintiff for his injuries.[9]
With regard to the claim for loss of consortium by Wendy Quebedeaux, we | inacknowledge our difficulty in determining whether the injury giving rise to this claim resulted from the aftermath of the battery inflicted upon Mr. Quebedeaux or from the termination of his employment with Dow. However, considering Mrs. Que-bedeaux’s testimony, we find the loss of consortium suffered by Mrs. Quebedeaux was attributable, in part, to the battery inflicted upon her husband. Thus, we find that a damage award for loss of consortium is warranted herein in the amount of $5,000.00. In all other respects, the judgment is maintained.
CONCLUSION
For the above and foregoing reasons, and in accordance with our obligation on remand, the portion of the lower court’s judgment pertaining to plaintiffs’ damage awards is reversed and set aside. Damages are hereby awarded in favor of J. Jude Quebedeaux and against The Dow Chemical Company in the total amount of $80,000.00 and consortium damages are awarded in favor of Wendy Quebedeaux and against The Dow Chemical Company in the amount of $5,000.00 subject to reduction for the percentage of fault assigned by the jury as attributable to Que-bedeaux (35%). In all other respects, the lower court judgment is affirmed.
Costs are assessed against defendant, The Dow Chemical Company.[10]
AFFIRMED IN PART; JUDGMENT REVERSED AND SET ASIDE IN PART; AND RENDERED.
KUHN, J., concurs and assigns reasons.

. See Quebedeaux v. Dow Chemical Co., 2001-2297 (La.11/21/01), 801 So.2d 1080.

. See Quebedeaux v. Dow Chemical Co., 2000-0465 (La.App. 1st Cir.5/11/01), 809 So.2d 983, (Whipple dissenting).

. See Quebedeaux v. Dow Chemical Co., 2001-2297 (La.6/21/02), 820 So.2d 542.

. Quebedeaux’s wife, Wendy, also sued for loss of consortium.

. Also named as defendants in plaintiffs’ amended petition were Reliance National Insurance Company and Dorinco Reinsurance Company.

. Mr. Dandridge did not appeal the district court's judgment. Thus, the judgment is final as to him.

. Five of the Justices concurred in the result in the majority opinion, three of whom assigned reasons.

. In support of its conclusion, the Supreme Court set forth the following rationale:
We find victim compensation, which is one of the primary policies supporting vicarious liability, must give way to the employment-at-will doctrine, which furthers broader societal policies, such as maintaining a free and efficient flow of human resources. We also observe that, if we were to accept plaintiffs’ argument, employers would be placed in the precarious position of having to retain combatant employees following workplace fights to avoid vicarious liability for any damages arising out of termination. Such a result would unfairly hamstring employers from making sensible business decisions.
Quebedeaux v. Dow Chemical Co., 2001-2297 at p. 6, 820 So.2d at 546.

. See Lowrey v. Pettit, 31,881 (La.App.2d Cir.5/7/99), 737 So.2d 213, where a store owner was deemed liable for battery committed on store employee, who suffered emotional distress and anxiety.

. Although the damage awards were vacated for re-determination on remand, the finding of liability on the part of Dow was not disturbed.